Case No. 2020-142

# *UNITED STATES COURT OF APPEALS*

## *for the*

## *FEDERAL CIRCUIT*

In re: NITRO FLUIDS L.L.C.,

*Petitioner.*

On Petition for Writ Mandamus
to the United States Court for the Western District of Texas
in No. 6-20-cv-00125-ADA, Judge Alan D. Albright

## CAMERON INTERNATIONAL CORP.'S
## RESPONSE TO NITRO FLUIDS L.L.C.'S PETITION
## FOR WRIT OF MANDAMUS

JOHN R. KEVILLE
*Attorney of Record*

*Of Counsel:*

MERRITT D. WESTCOTT
WILLIAM M. LOGAN
RICHARD L. STANLEY
WINSTON & STRAWN LLP
P.O. BOX 7967
800 Capitol Street, Suite 2400
HOUSTON, TX 77270
Houston, Texas 77002-2925
(832) 656-4277
(713) 651-2600

*Attorneys for Respondent*
*Cameron International Corp.*

August 7, 2020

## UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

### REVISED CERTIFICATE OF INTEREST

Case Number:                2020-142

Short Case Caption:         In re: Nitro Fluids L.L.C.

Filing Party:               Respondent Cameron International Corp.

_____

The undersigned counsel for Respondent Cameron International Corporation

herby certifies the following:

1.  **Represented Entities**. Fed. Cir. R. 47.4(a)(1). Provide the full names of all entities represented by undersigned counsel in this case.

    Cameron International Corporation.

2.  **Real Party in Interest**. Fed. Cir. R. 47.4(a)(2). Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.

    None.

3.  **Parent Corporations and Stockholders**. Fed. Cir. R. 47.4(a)(3). Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.

    Schlumberger Holdings Corporation
    Schlumberger Limited

4.  **Legal Representatives**. List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

    Winston & Strawn LLP: Evan D. Lewis.

5.   **Related Cases**. Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal. Do not include the originating case number(s) for this case. Fed. Cir. R. 47.4(a)(5). *See also* Fed. Cir.R.47.5(b).

*Cameron International Corp. v. Butch's Rathole & Anchor Service, Inc.*, No. 6:20-cv-00124-ADA (W.D. Tex.) (Judge Alan D. Albright) (involves same patents asserted in present case).

*Cameron International Corp. v. Nitro Fluid, L.L.C.*, No. 4-18- cv-02533 (S.D. Tex.) (Judge Lynn Hughes) (involves same parties as present case, with three different asserted patents where one of those different patents is in the same family as one of the patents asserted in present case).

6.   **Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

Not Applicable.

I certify that the above information is accurate and complete to the best of my knowledge.

Dated: August 7, 2020                       Respectfully submitted,

                                             /s/ John R. Keville
                                            John R. Keville
                                            WINSTON & STRAWN LLP
                                            800 Capitol Street, Suite 2400
                                            Houston, Texas 77002-2925
                                            (713) 651-2600
                                            *Counsel for Respondent*

# **TABLE OF CONTENTS**

**Page**

I.         INTRODUCTION AND STATEMENT OF ISSUES.........................1

II.       STATEMENT OF FACTS...................................................4

       A.    Cameron and Nitro Are Texas-Based Oilfield Equipment and Supply Companies That Offer Competing Fracturing-Fluid Delivery Systems..................................................................4

       B.    Cameron Filed The Houston Case Two Years Ago Asserting Different Patents....................................................................5

       C.    Cameron Filed New Western District Suits Asserting Different Patents...........................................................................6

III.      REASONS FOR DENYING THE WRIT...........................................8

       A.    The District Court Did Not Clearly Abuse Its Discretion By Deciding Not To Apply The First-Filed Rule ......................9

       B.    The District Court's Application Of The First-Filed Rule Did Not Produce A Patently Erroneous Result ................................13

            1.    This Case Lacks Sufficient Overlap With The Houston Case To Warrant Applying The First-Filed Rule .............................13

            2.    The District Court Erred By Not Applying This Court's Precedent To Evaluate The Overlap Between The Two Cases 17

       C.    The District Court Did Not Clearly Abuse Its Discretion In How It Used The § 1404(a) Factors To Find That The Comparative Advantages And Interests Of The Forums Favored The Western District ...........................................................................23

       D.    The District Court Did Not Clearly Err Or Abuse Its Discretion In How It Weighed And Balanced The § 1404(a) Factors .................26

            1.    The District Court Did Not Clearly Err In Finding The Availability Of Compulsory Process Factor Is Neutral............27

2.    The District Court Did Not Clearly Err In Finding The Cost Of Attendance Factor Is Neutral ................................................ 28

3.    The District Court Did Not Clearly Err In Finding That The Other Practical Problems Factor Heavily Favors The Western District .......................................................................... 29

4.    The District Court Did Not Clearly Err In Finding That The Relative Congestion Of The Forums Weighed Against Transfer ..................................................................................... 32

5.    The District Court Did Not Clearly Err In Finding Local Interests Only Slightly Favored Transfer .................................. 33

IV.       CONCLUSION ................................................................... 35

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Abbott Labs. v. Johnson & Johnson, Inc.*,
  524 F. Supp.2d 553 (D. Del. 2007), *aff'd*, 297 F. App'x 966 (Fed.
  Cir. 2008) ...................................................................................14

*Actifio, Inc. v. Delphix Corp.*,
  2015 WL 1243164 (D. Mass. Mar. 17, 2015) ....................................14

*Acumed LLC v. Stryker Corp.*,
  525 F.3d 1319 (Fed. Cir. 2008) ..................................................19, 20

*In re Apple Inc.*,
  456 F. App'x 907 (Fed. Cir. 2012) ..................................................13

*In re ASM Int'l, N.V.*,
  774 F. App'x 650 (Fed. Cir. 2019) ..............................................10, 14

*Cadle Co. v. Whataburger of Alice, Inc.*,
  174 F.3d 599 (5th Cir. 1999) ......................................................11, 12

*In re Canrig Drilling Tech., Ltd.*,
  2015 WL 10936672 (Fed. Cir. 2015) ................................................28

*Cheney v. U.S. Dist. Ct. for Dist. of Columbia*,
  542 U.S. 367 (2004)...........................................................................8

*In re Cordis Corp.*,
  769 F.2d 733 (Fed. Cir. 1985) ...........................................................13

*Duffie v. United States*,
  600 F.3d 362 (5th Cir. 2010) ............................................................19

*Elecs. for Imaging, Inc. v. Coyle*,
  394 F.3d 1341 (Fed. Cir. 2005) ...........................................................9

*Ex parte Fahey*,
  332 U.S. 258 (1947)............................................................................8

*Futurewei Techs., Inc. v. Acacia Research Corp.*,
   737 F.3d 704 (Fed. Cir. 2013) .................................................................*passim*

*GAF Bldg. Materials Corp. v. Elk Corp. of Dallas*,
   90 F.3d 479 (Fed. Cir. 1996) ............................................................15

*In re Genentech, Inc.*,
   566 F.3d 1338 (Fed. Cir. 2009) ..........................................................33

*Hart v. Donostia LLC*,
   290 F. Supp.3d 627 (W.D. Tex. 2018) ......................................................25, 26

*IBM Corp. v. Amazon.com, Inc.*,
   2007 WL 9724341 (E.D. Tex. 2007)....................................................12

*Int'l Fid. Ins. Co. v. Sweet Little Mexico Corp.*,
   665 F.3d 671 (5th Cir. 2011) ........................................................11, 24

*Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*,
   342 U.S. 180 (1952)......................................................................9

*Merial Ltd. v. Cipla Ltd.*,
   681 F.3d 1283 (Fed. Cir. 2012) ...........................................................9

*Micron Tech., Inc. v. Mosaid Techs., Inc.*,
   518 F.3d 897 (Fed. Cir. 2008) .....................................................9, 24

*Mission Ins. Co. v. Puritan Fashions Corp.*,
   706 F.2d 599 (5th Cir. 1983) ......................................................24, 26

*In re Mobile Telecomms. Techs., LLC*,
   243 F. Supp.3d 478 (D. Del. 2017)...................................................12

*N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*,
   599 F.3d 102 (2d Cir. 2010) .......................................................25, 26

*Nexon Am. Inc. v. Uniloc 2017 LLC*,
   2020 WL 3035647 (D. Del. June 5, 2020) .......................................12

*Pragmatus AV, LLC v. Yahoo! Inc.*,
   2013 WL 4629000 (D. Del. 2013), *report adopted*, 2013 WL
   5755250 (D. Del. 2013) ........................................................15, 17, 24

*Sanofi-Aventis Deutschland GmbH v. Novo Nordisk, Inc.*,
    614 F. Supp.2d 772 (E.D. Tex. 2009)................................................................12

*Save Power Ltd. v. Syntek Fin. Corp.*,
    121 F.3d 947 (5th Cir. 1997) ........................................................10, 11

*In re Seattle SpinCo, Inc.*,
    2020 WL 3275605 (Fed. Cir. 2020) ........................................................14, 26

*Senju Pharm. Co. v. Apotex, Inc.*,
    746 F.3d 1344 (Fed. Cir. 2014) ....................................................19, 20

*SimpleAir, Inc. v. Google LLC*,
    884 F.3d 1160 (Fed. Cir. 2018) ........................................................*passim*

*In re Telebrands Corp.*,
    773 F. App'x 600 (Fed. Cir. 2016) ........................................................10, 14, 24

*Tradewinds Envtl. Restoration, Inc. v. St. Tammany Park, LLC*,
    578 F.3d 255 (5th Cir. 2009) ................................................................33

*In re TS Tech USA Corp.*,
    551 F.3d 1315 (Fed. Cir. 2008) ....................................................8, 25

*In re Vicor Corp.*,
    493 F. App'x 59 (Fed. Cir. 2012) ........................................................31

*In re Vistaprint Ltd.*,
    628 F.3d 1342 (Fed. Cir. 2013) ....................................................30, 35

*In re Volkswagen of Am., Inc.*,
    545 F.3d 304 (5th Cir. 2008) (*en banc*)........................................................25, 27

*In re Volkswagen of Am., Inc.*,
    566 F.3d 1349 (Fed. Cir. 2009) ....................................................27, 31

*XY, LLC v. Trans OVA Genetics, LC*,
    2020 WL 4378028 (Fed. Cir. July 31, 2020)........................................................22

**Statutes**

28 U.S.C. § 1404(a) ........................................................*passim*

**Other Authorities**

Restatement (Second) of Judgments (1982) § 24 ....................................................20

# **ABBREVIATIONS**

| | |
|---|---|
| Cameron | Plaintiff-Respondent Cameron International Corp. |
| Nitro | Defendant-Petitioner Nitro Fluids, L.L.C. |
| Petition | Nitro Fluids L.L.C.'s Petition for Writ of Mandamus (filed July 24, 2020) |
| '645 patent | U.S. Patent No. 10,385,645 (Appx72-91) |
| '132 patent | U.S. Patent No. 9,915,132 (Appx58-71) |
| Waco Patents | U.S. Patent Nos. 9,915,132 and 10,385,645, collectively |
| Waco Case | *Cameron International Corp. v. Nitro Fluids, LLC*, No. 6:20-cv-00125-ADA (W.D. Tex.) |
| Western District | United States District Court for the Western District of Texas |
| '190 patent | U.S. Patent No. 9,903,190 (Appx261-274) |
| '800 patent | U.S. Patent No. 9,932,800 (Appx222-241) |
| '195 patent | U.S. Patent No. 10,094,195 (Appx242-260) |
| Houston Patents | U.S. Patent Nos. 9,903,190; 9,932,800; and 10,094,195, collectively |
| Houston Case | *Cameron International Corp. v. Nitro Fluids, LLC*, No. 4:18-cv-02533 (S.D. Tex.) (Judge Hughes) |
| Southern District | United States District Court for the Southern District of Texas |
| Butch's Case | *Cameron International Corp. v. Butch's Rathole & Anchor Service, Inc.*, No. 6:20-cv-00124-ADA (W.D. Tex.) |

| | |
|---|---|
| Butch's | Defendant Butch's Rathole & Anchor Service, Inc. in the Cameron-Butch's Case |
| USPTO | United States Patent and Trademark Office |
| PTAB | Patent Trial and Appeal Board |
| IPR | Inter Partes Review |
| CIP | continuation-in-part application |
| Appx1-476 | Appendix pages submitted with Nitro's Petition |
| Appx477-479 | Appendix pages submitted with Cameron's Response |
| Appx___(yy:zz) | Appendix page citing a U.S. patent where yy is the column and zz is the line number |

**NOTE: All emphasis and parentheticals in the brief have been added unless otherwise indicated.**

# I.  INTRODUCTION AND STATEMENT OF ISSUES

Cameron hereby responds to Nitro's Petition for a writ of mandamus seeking the extraordinary relief of requiring the district court to vacate its order declining to transfer this case from the Western District of Texas (Waco) to the Southern District of Texas (Houston) where an earlier suit asserting three different patents against similar accused devices has been pending without significant progress for over two years. As shown herein, this Court should end Nitro's delay tactics to avoid reaching the merits by denying the Petition in its entirety.

In July 2018, Cameron sued Nitro in the Southern District, alleging that Nitro infringed, *inter alia*, the '190, '800, and '195 patents. Appx152-153. After two years, not much has happened. There was one hearing in October 2019 to construe one term in the '195 patent (still unresolved), but no discovery has begun. Appx32-33.

In February 2020, Cameron filed this suit against Nitro in the Western District, asserting two other patents: the '132 and '645 patents. Appx51-57. In February 2020, Cameron also sued in the Western District asserting the '132 and '645 patents against a third party (Butch's). Appx16-18. There is no basis for transferring the Butch's case, and that case is scheduled for a *Markman* hearing this month. The *Markman* hearing in this case is scheduled to follow in January. Appx39.

The patents asserted by Cameron in the two pending cases against Nitro are entirely different. Indeed, the '132 patent in Waco is completely unrelated to any of

the three Houston Patents. While the '645 patent issued from a CIP of one of the three patents asserted in Houston, it issued 14 months after the Houston case began. Apart from alleging that the two cases concern fracturing technology and involve the same parties and same accused products, Nitro failed to show how the asserted claims in each case are patentably indistinct, directed to essentially the same invention, or the degree to which they are substantively overlapping.

Specifically declining to follow Federal Circuit precedent, the district court found "a likelihood of substantial overlap" between the Waco and Houston cases against Nitro, but concluded that the "first-to-file" rule did not require transferring the Waco case to the Southern District because the balance of factors under 28 U.S.C. § 1404(a) did not favor transfer. While the district court's "first-to-file" analysis was guided by Fifth Circuit law and not this Court's precedent, its ultimate conclusion was correct and does not constitute a clear abuse of discretion warranting mandamus relief.

Hence, the following issues are presented:

1.    Whether the district court's decision not to dismiss or transfer Cameron's Waco Case resulted from such a clear abuse of discretion as to be a patently erroneous result that warrants the extraordinary relief of mandamus?

2.    Whether the district court clearly abused its discretion in not applying the "first-to-file" rule where the overlap between Cameron's two cases asserting

2

entirely different patents is much less than complete and in declining to transfer the Waco case based on its reasoned assessment of the extent of the overlap, the likelihood of conflicts, the comparative advantages, and the interest of each forum in resolving the disputes?

3.     Whether the district court erred in applying Fifth Circuit law rather than this Court's when deciding whether there was a sufficient substantive overlap between the asserted claims of the two patents in Waco and the claims of the three different patents in Houston so as to require a "first-to-file" analysis?

4.     Whether the district court erred by failing to compare the claims of the different patents asserted in Cameron's two pending cases to determine whether their scope is essentially the same or whether they are patentably distinct?

5.     Whether the district court can be held to have clearly abused its discretion in declining to transfer the Waco case either under the "first-to-file" rule or under § 1404(a) where the Petition merely reargues Nitro's view of the evidence without showing any clear error in the findings on the private and public factors and where the court's balancing determined that judicial economy, the relative convenience and congestion of the forums, and the existence of a co-pending case in Waco involving the same patents weighed against transfer?

## II. STATEMENT OF FACTS

### A.    Cameron and Nitro Are Texas-Based Oilfield Equipment and Supply Companies That Offer Competing Fracturing-Fluid Delivery Systems

Nitro and Cameron are Texas-based competitors in oilfield equipment and supply. Appx51-53. Nitro and Cameron each offer fracturing-fluid delivery systems. Appx51-53. Cameron invented and patented several improvements to such fracturing-fluid delivery systems, which it markets as the MONOLINE™ Fluid Delivery System. Appx52-53. The parties' disputes began when Nitro copied Cameron's patented fracturing-fluid system and then used Cameron's own designs to compete with it. Appx51.

Nitro's accused systems compete with Cameron in the Western District, including in Pecos and Odessa. Appx51-54; Appx478-479. In providing the accused systems, "Nitro procures, delivers, and physically sets up the equipment at a customer's well site." Appx318. Nitro maintains an "office and equipment yard in Monahans"[1] as a "'staging' site" for "West Texas jobs." Appx320. Several employees work at Nitro's Monahans facility, including a district manager presumably with extensive knowledge about Nitro's west Texas activities. Appx320.

Cameron also has significant Western District operations. Appx478-479. Cameron employs hundreds in the District and has multiple regional offices,

---

[1] Monahans is located midway between Pecos and Odessa in west Texas and is approximately 375 miles from Waco and over 525 miles from Houston.

including an office in Midland and an equipment staging and repair site in Odessa. Appx478-479. Those offices store most documents and physical equipment related to Cameron's west Texas operations. Appx479. Cameron's employees in the Western District have knowledge about the operations of Cameron and its competitors. Appx479.

## B.    Cameron Filed The Houston Case Two Years Ago Asserting Different Patents

In July 2018, Cameron sued Nitro in the Southern District of Texas, asserting five patents. Appx41; Appx170. The Houston case has progressed little in two years. Appx23-34. The primary activity was an inspection in July 2018, after which Cameron dropped two patents, leaving the three Houston Patents. Petition 6. In March 2019, proceedings on the '190 and '800 patents were stayed after Nitro filed IPR petitions. Appx31. The '190 patent stay was lifted in August 2019 after the PTAB declined institution. Appx32. The '800 patent remains stayed. Appx31. In October 2019, the Houston court held a hearing to construe one term (goat head) in the '195 patent, but has not ruled. Appx32-33; Appx284. The parties have conducted no other discovery, and the Houston court has construed no terms. Appx31-33.

The parties each have headquarters in the Southern District, but neither Cameron nor Nitro likely have substantial evidence or key witnesses in the Houston area. Appx319; Appx478-479. Nitro does not have offices in Houston. Appx319. Nitro contends that most technical and financial data regarding its infringing

activities are at its Nordheim office, which is also where Nitro says its "key employees" work. Appx319-320. Nordheim is in the Southern District but is essentially equidistant from Waco and Houston. Appx12; Appx309-313.

Cameron does not build or install fracturing-fluid delivery systems in the greater Houston area. Appx478-479. Most Cameron documents concerning its fracturing-fluid delivery systems are in regional locations, like Midland. Appx479. Lee Eubanks, who prosecuted the Houston Patents and the Waco Patents, lives in Houston, but is subject to compulsory process in the Western District. Appx13-14. The same is true for Kirk Guidry, the '645 patent's inventor. Appx13-14. Other than the parties' corporate offices being in disparate locations in the Southern District, it provides no advantage over any other Texas district. Appx20-21; Appx309.

## C.     Cameron Filed New Western District Suits Asserting Different Patents

With the Houston action languishing, Nitro and others, including Butch's, continued to infringe Cameron's patents—particularly in west Texas. Because Butch's is based in the Western District (Appx461), Cameron filed suit against Butch's in Waco, asserting the two Waco Patents. Appx346. Rather than further delay the Houston Case or duplicate efforts by litigating the same patents in different districts, Cameron also sued Nitro for infringing the Waco Patents in the Western District. Appx51.

Neither Waco Patent is at issue in Houston. Appx170-172. The '132 patent is not in the same family as any Houston Patent. Appx59. While the '645 patent issued from an indirect continuation of the '195 patent asserted in Houston, the '645 patent issued 14 months after Cameron filed the Houston Case, which was after the time for amendment as of right. Appx73.

After Cameron served the Waco complaint, Nitro sought additional time to answer. Appx37-38. After receiving that extension, Nitro moved for leave to add declaratory judgment claims to the Houston Case alleging noninfringement and invalidity of the Waco Patents. Appx33. Only after trying to manufacture a venue transfer hook in Houston, Nitro moved to dismiss the Waco Case or transfer to the Southern District. Appx38.

Since then, both Western District cases have significantly progressed. In this case, the district court entered a scheduling order, denied Nitro's motions to dismiss or transfer, and set a *Markman* hearing. Appx35-39. The parties have exchanged infringement and invalidity contentions, have identified terms needing construction, and will soon complete claim construction briefing. *See* Appx38-39; Appx328-329. In the Butch's case on the same patents, the parties have identified similar terms for construction, filed claim construction briefs and responses, and a *Markman* hearing is scheduled for August 31. Meanwhile, the Houston Court has not ruled on Nitro's request to add the Waco Patents. Appx33-34.

7

### III.    REASONS FOR DENYING THE WRIT

Granting a petition for writ of mandamus to compel transfer requires showing a clear abuse of discretion that produced a patently erroneous result. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1318-19 (Fed. Cir. 2008). Courts issue such relief sparingly and only in "extraordinary" circumstances. *Cheney v. U.S. Dist. Ct. for Dist. of Columbia*, 542 U.S. 367, 380-81 (2004) (quoting *Ex parte Fahey*, 332 U.S. 258, 259-60 (1947)). No such clear abuse of discretion or extraordinary circumstances exist here.

Nitro has not identified a clear and indisputable right to transfer. Where the overlap between two pending cases is not nearly complete, district courts have considerable discretion to decide whether to adhere to the first-filed rule. Here, the Waco and Houston Cases against Nitro involve different patents covering different inventions, and the court was well within its discretion in determining that the balance of circumstances justified not applying the rule. Indeed, if the district court had properly followed this Court's precedent, no likelihood of a substantial overlap between the cases should have been found.

District courts can consider the § 1404(a) factors when deciding whether to apply the first-filed rule. Because both forums have similar ties to the parties, the witnesses, and the availability of proof and compulsory process, and because both imposed comparable costs on non-party witnesses, the district court found most

8

factors were neutral. But the court found that judicial economy weighed heavily against transfer because the Waco Court has a co-pending case involving the same patents that is not subject to transfer. Given the significant progress already made in both Waco cases involving the same patents, it was not a clear abuse of discretion to decline to transfer one of those cases to a more congested district court. This Court should deny the Petition and allow this case to remain on track toward a speedy, efficient, and fair resolution on the merits.

## A.    The District Court Did Not Clearly Abuse Its Discretion By Deciding Not To Apply The First-Filed Rule

"The [first-filed] rule is not rigidly or mechanically applied—'an ample degree of discretion, appropriate for disciplined and experienced judges, must be left to the lower courts.'" *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1299 (Fed. Cir. 2012) (quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183-84 (1952)). "[T]he rule is not absolute; exceptions may be made if justified by 'considerations of judicial and litigant economy, and the just and effective disposition of disputes, requires otherwise.'" *Futurewei Techs., Inc. v. Acacia Research Corp.*, 737 F.3d 704, 708 (Fed. Cir. 2013) (quoting *Elecs. for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1347 (Fed. Cir. 2005)). And "exceptions are not rare." *Micron Tech., Inc. v. Mosaid Techs., Inc.*, 518 F.3d 897, 904 (Fed. Cir. 2008).

While this Court treats an earlier-filed case under the "first-to-file" rule when two actions "sufficiently overlap," *Futurewei*, 737 F.3d at 708, it will "defer to a

district court's reasoned assessment" about whether the first-filed rule should apply unless the overlap is "complete or nearly complete." *In re ASM Int'l, N.V.*, 774 F. App'x 650, 652 (Fed. Cir. 2019). When, as here, the overlap between the cases is not complete or nearly complete, "the second district court has considerably more discretion." *In re Telebrands Corp.*, 773 F. App'x 600, 602 (Fed. Cir. 2016). In those instances, the "judgment is made case by case, based on such factors as the extent of overlap, the likelihood of conflict, the comparative advantage and the interest of each forum in resolving the dispute." *Id.*

In *Telebrands*, the second-filed court was in Texas and the first-filed court was in New Jersey. *Id.* Despite both cases involving the same parties and accused products, this Court held the Texas court had not abused its discretion in retaining the case because it "properly found that transfer was not required under the first-to-file rule because the two actions were not identical or nearly identical." *Id.* at 603. In doing so, this Court in *Telebrands* cited to Fifth Circuit authority. *Id.* at 602 (citing *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 951 (5th Cir. 1997)).

In *Save Power*, the second-filed court denied a motion to transfer where the same issue was before both courts (*i.e.*, whether one party should be enjoined from foreclosing on the other's assets) and the courts had already reached "inconsistent rulings." 121 F.3d at 951. The Fifth Circuit did not hold that the second court could not decide whether the first-filed rule should apply. Instead, the Court noted that the

second-filed court has "broad discretion to decide whether to transfer this case," but merely decided that it had abused its discretion "under the particular circumstances here" where the issues were nearly identical and had already led to inconsistent rulings. *See id.* at 950 n.3.

The Fifth Circuit also recognizes that "[w]here the overlap between two suits is less than complete, the judgment is made case by case, based on such factors as the extent of overlap, the likelihood of conflict, the comparative advantage and the interest of each forum in resolving the dispute." *See Int'l Fid. Ins. Co. v. Sweet Little Mexico Corp.*, 665 F.3d 671, 678 (5th Cir. 2011) (citing *Save Power*). Because Cameron's two cases involve different patents that do not completely or nearly completely overlap, the district court correctly exercised its discretion under either circuit's law not to apply the first-filed rule based on its detailed evaluation of the relevant transfer factors and other circumstances.

Contrary to Petition 14-15, nothing in *Cadle Co. v. Whataburger of Alice, Inc.,* 174 F.3d 599, 603 (5th Cir. 1999), alters the "first-to-file" rule as a discretionary doctrine. The Fifth Circuit in *Whataburger* limited its holdings to whether the second-filed court must resolve the first-filed court's jurisdiction before applying the first-filed rule and whether, upon finding a substantial overlap between the cases, the second-filed court could dismiss instead of transfer. *See id.* at 603 (noting the "only proper subject for our attention" is the district court's decision to dismiss

11

Cadle's claims under the first-to-file rule and to leave Cadle's jurisdiction for the bankruptcy court). As there is no such jurisdictional issue here, *Whataburger* merely shows that Nitro's motion to dismiss was not well-taken.

If Fifth Circuit law is construed to foreclose a second-filed court from determining whether any circumstances justify not applying the first-filed rule, then this Court should apply Federal Circuit law. *See Sanofi-Aventis Deutschland GmbH v. Novo Nordisk, Inc.*, 614 F. Supp.2d 772, 776 n.3 (E.D. Tex. 2009) (applying Federal Circuit law and noting "parallel analysis under Fifth Circuit law has the potential to yield a different result").[2] But as this Court stated in *Futurewei*, 737 F.3d at 708, "[r]esolution of whether the second-filed action should proceed presents a question sufficiently tied to patent law that the question is governed by this circuit's law." *See infra* section III.B.2.

---

[2] This is consistent with current understanding in other district courts. *See Nexon Am. Inc. v. Uniloc 2017 LLC*, 2020 WL 3035647, at *2 (D. Del. June 5, 2020) ("In patent cases, application of the first-filed rule is governed by Federal Circuit law." (quoting *In re Mobile Telecomms. Techs., LLC*, 243 F. Supp.3d 478, 483 (D. Del. 2017) (determining overlapping issues exist but deciding as the second-filed court not to transfer or dismiss)); *IBM Corp. v. Amazon.com, Inc.*, 2007 WL 9724341, at *1 (E.D. Tex. 2007) ("law of the Federal Circuit governs"). While Nitro cites *Sanofi-Aventis* as suggesting something different (Petition 12), the sentence quoted by Nitro is nowhere in that decision.

**B.    The District Court's Application Of The First-Filed Rule Did Not Produce A Patently Erroneous Result**

The district court did not reach a patently erroneous result in concluding that the first-filed rule should not apply here. While the court found "a likelihood of substantial overlap" between the two cases, it recognized that the undetermined (and unproven) extent of such overlap was not so extensive as to prevent the court from deciding whether there were "sufficiently compelling circumstances to avoid the rule's application." Appx10. Because any overlap here is nowhere near complete and the likelihood of conflict is correspondingly low, and because the comparative advantages and the relative interests of the forums favor the Western District, the district court did not clearly abuse its discretion in not applying the first-filed rule.

**1.    This Case Lacks Sufficient Overlap With The Houston Case To Warrant Applying The First-Filed Rule**

Nitro cannot meet its burden of showing that the district court's ruling was patently erroneous because "if a rational and substantial legal argument can be made in support of the rule in question, the case is not appropriate for mandamus." *In re Apple Inc.*, 456 F. App'x 907, 909 (Fed. Cir. 2012) (quoting *In re Cordis Corp.*, 769 F.2d 733, 737 (Fed. Cir. 1985)). Here, rational arguments establish that adherence to the first-filed rule was not mandated because any overlap between the cases is not nearly complete, and could not be so deemed without expressly finding under Federal Circuit law that the asserted claims in each case are patently indistinct.

13

First, it is not sufficient to mandate applying the first-filed rule merely to show that the same parties and same products are involved in both cases. *See ASM*, 774 F. App'x at 652; *Telebrands Corp.*, 773 F. App'x at 602; *Actifio, Inc. v. Delphix Corp.*, 2015 WL 1243164, at *6 (D. Mass. Mar. 17, 2015). Alternatively, when the cases involve different patents, that alone can be sufficient to avoid the first-filed rule. *See Abbott Labs. v. Johnson & Johnson, Inc.*, 524 F. Supp.2d 553, 558 (D. Del. 2007) (inappropriate "to apply the first-filed rule … because those cases involve different patents"), *aff'd*, 297 F. App'x 966 (Fed. Cir. 2008); *Actifio*, 2015 WL 1243164, at *6 ("The Court is wary of broadening the rule further than circumstances involving identical patents or functionally duplicative actions.").

Aside from involving entirely different patents, there are further distinctions between the patents asserted in the two cases. The '132 patent is not in the same family as any Houston Patent. Appx59. While the '132 patent shares an inventor with one Houston Patent (the '190 patent), Nitro cited no authority showing that a common inventor makes unrelated patents overlapping. *See In re Seattle SpinCo, Inc.*, 2020 WL 3275605, at *1 (Fed. Cir. 2020) (noting "lack of precedential support means that [petitioner's] right to transfer based on the first-to-file rule is not clear and indisputable"). The other Waco patent, the '645 patent, issued 14 months after the Houston Case began. *See Abbott*, 524 F. Supp.2d at 558 (not applying first-filed rule because second patent "did not exist" so "no case or controversy existed" when

the first-filed suit began); *cf. GAF Bldg. Materials Corp. v. Elk Corp. of Dallas*, 90 F.3d 479, 483 (Fed. Cir. 1996) (validity and infringement disputes "are necessarily hypothetical before patent issuance").

While the '645 patent issued from a CIP in the same family as the '195 patent asserted in Houston, that alone cannot establish sufficient overlap to require automatically applying the first-filed rule. *See Pragmatus AV, LLC v. Yahoo! Inc.*, 2013 WL 4629000, at *11 (D. Del. 2013) (not applying first-filed rule where patent in second-filed case "was a continuation of and shared a common specification with two of the patents in the earlier-filed action"), *report adopted*, 2013 WL 5755250 (D. Del. 2013). Put differently, one patent in each case coming from the same patent family is not enough to demonstrate Nitro has a clear and indisputable right to a transfer in this case.

Moreover, Nitro never showed that the asserted claims of the Waco Patents and the Houston Patents cover the same subject matter.[3] Apart from asserting the obvious that the patents all relate to fracturing equipment and include common elements like fracturing manifolds and fracturing trees (as might be expected in a dispute involving competing fracturing systems), Nitro never explained (and the

---

[3] Cameron has asserted claims 9, 10, and 12 from the '132 patent, and claims 1-4, 7-8, 10, 13-15, 17-18, and 20 from the '645 patent.

district court never addressed) how the asserted claims are sufficiently overlapping to support (much less require) applying the first-filed rule.

There are important distinctions between the asserted claims in Houston and in Waco. For example, the '190 patent asserted in Houston describes fracturing manifolds comprising modular skids. Appx273 (claim 1 requiring "a skid apparatus coupled in fluid communication with the fracturing fluid manifold"). Neither Waco Patent claims fracturing manifolds comprising modular skids. The '195 patent describes adjustable fracturing systems or fracturing systems that incorporate goat heads, which Nitro asserted in Houston are adjustable components.[4] Appx260 (claim 1 requires "linearly variable adjustment joint" while claim 7 requires "a goat head"). No claim asserted in Waco requires adjustable components or goat heads.

And in contrast to the asserted claims in Waco (Appx71; Appx90-91), the remaining Houston Patent (the stayed '800 patent) has no claim requiring a fluid conduit comprising pipes and connection blocks to the fracturing tree or well.[5] By

---

[4] The district court accepted that "goat head" and "connection block" describe the same component. Appx9. But Nitro has consistently contended that "goat head" in the Houston Patents requires an adjustable component, not a connection block. *See* Appx297 ("Clearly neither 'goat head' nor 'fracturing head' are ever used to refer to any other component in the patent, except these adjustable components.").

[5] Claim 12 of the '800 patent mentions connection blocks, but unlike the asserted claims in the Waco Patents, claim 12 requires connection blocks within the fracturing manifold (between the outlet branches and trunk line) rather than as part of the fluid conduit extending between the fracturing manifold and the fracturing tree or well. Appx241.

claiming different improvements to the interconnections of general fracturing equipment (like fracturing manifolds and fracturing trees), the claims asserted in the two cases are substantially distinct. *See Pragmatus*, 2013 WL 4629000, at *11 (declining to apply the first-filed rule where the patents "at least arguably involve different technologies, further limiting the risk of inconsistent judgments").

Under either Fifth Circuit or Federal Circuit precedent, the district court had the discretion to examine whether any circumstances existed that warranted not applying the first-filed rule. No clear abuse of that discretion has been shown.

### 2. The District Court Erred By Not Applying This Court's Precedent To Evaluate The Overlap Between The Two Cases

As noted, this Court in *Futurewei* stated without qualification that resolving "whether the second-filed action should proceed presents a question sufficiently tied to patent law that the question is governed by this circuit's law." 737 F.3d at 708. Viewing that statement as unambiguous and controlling, Cameron provided that authority to the district court to show that this Court's precedent governed the "first-to-file" rule in patent cases. Appx360-362.

In rejecting Cameron's position, the district court held its analysis did not require "enough substantive patent law to warrant the control of Federal Circuit precedent." Appx3 n.2. The court dismissed this Court's cases as limited to "a later filed infringement action in relation to an earlier filed declaratory judgment action." *Id*. Because these cases were two infringement actions, the court ruled that they "can

17

be examined under the first-to-file rule without applying substantive patent law." *Id*. Indeed, the court declared that "[w]hile the analysis for substantial overlap will necessitate discussion of the similarity of the patents, the Court will not perform analyses characteristic of patent cases such as claim construction that would warrant use of Federal Circuit precedent." *Id*.

The district court erred in holding that this Court's "first-to-file" precedent applies only to mirror-image infringement and declaratory judgment cases. This Court's statement in *Futurewei* was not so limited. *Futurewei* itself involved a declaratory judgment action filed after an infringement suit. *See* 737 F.3d at 706. Obviously, in mirror-image infringement and declaratory judgment cases based on the same patent, the asserted claims will be the same. However, Cameron's two patents asserted in Waco are entirely different from its three patents asserted in Houston, which requires evaluating the degree of overlap between the cases.

When the patent cases at issue involve different patents, it cannot be enough to decide from a non-patent perspective that the two pending cases are overlapping merely because they involve the same technology, parties, and/or accused devices. Instead, this Court's precedent establishes that the determination of whether one patent case is the same as or different from another patent case requires examining the asserted claims in both cases as a necessary component of a proper analysis.

This Court has held that "whether a particular cause of action in a patent case is the same as or different from another cause of action has special application to patent cases, and we therefore apply our own law to that issue." *See SimpleAir, Inc. v. Google LLC*, 884 F.3d 1160, 1165 (Fed. Cir. 2018) (quoting *Senju Pharm. Co. v. Apotex, Inc.*, 746 F.3d 1344, 1348 (Fed. Cir. 2014)); *Acumed LLC v. Stryker Corp.*, 525 F.3d 1319, 1323 (Fed. Cir. 2008). While such holdings were made when addressing claim preclusion,[6] they are equally applicable when deciding whether there is significant substantive overlap between two pending patent cases for the "first-to-file" rule. If this Court's statement in *Futurewei* did not make that sufficiently clear, then *Senju* and *SimpleAir* should leave no doubt that this Court's precedent must govern whenever a district court determines the relative scope of two different patent cases.

As explained in *SimpleAir*, this Court defines a cause of action based on the transactional facts from which it arises. *See* 884 F.3d at 1165 (citing, *inter alia*, *Senju*, 746 F.3d at 1349; Restatement (Second) of Judgments (1982) § 24). In a patent case, the "essential transactional facts include both the asserted patents and

---

[6] In assessing claim preclusion, this Court applies regional circuit law. *See SimpleAir*, 884 F.3d at 1165. Under Fifth Circuit precedent, the fourth element of the claim preclusion test is whether "the earlier case and later case involve the same cause of action." *Id.* (citing *Duffie v. United States*, 600 F.3d 362, 372 (5th Cir. 2010)). As shown by *SimpleAir*, Federal Circuit law applies when resolving that specific element, which is the identical issue presented here.

the accused activity." *See* 884 F.3d at 1165 (citing *Senju*, 746 F.3d at 1349; *Acumed*, 525 F.3d at 1324). However, what facts make up a transaction in a given case "is not capable of a mathematically precise definition." *See* 884 F.3d at 1165.

In *SimpleAir*, SimpleAir asserted two patents in a fourth suit against the same Google products after three prior suits involving patents from the same family had resulted in non-infringement judgments. *Id.* at 1163. The two asserted patents were continuations that were terminally-disclaimed from the original patent in the family. *Id*. at 1164. The district court held that those patents involved the same claim or cause of action as the prior cases because they had the same title and specification as the previously-adjudicated patents, but never compared their claims to those in the previously-adjudicated patents. *Id.*

This Court first explained that merely because the patents in the fourth suit had not been previously litigated by the parties "is not dispositive and does not substitute for the transactional approach consistently followed by this court." *Id*. at 1166. Nevertheless, this Court held that "the overlap discussed in the record before us [*i.e*., a common specification and a terminal disclaimer to a common parent] is not sufficient to sustain the district court's holding of claim preclusion." *Id*. While the district court declared that "the underlying invention is the same," this Court stressed that the court "never analyzed the claims of any patent in making that conclusion." *Id*. Because claims in a continuation may be broader than earlier patents

in the same family, this Court held that "the district court erred in holding SimpleAir's latest suit to be claim-precluded without any comparison of the asserted claims to the claims involved in [the earlier suits]." *Id*. at 1167.

Even where two cases involve the same parties and same accused products, this Court in *SimpleAir* made clear that "where different patents are asserted in a first and second suit, a judgment in the first suit will trigger claim preclusion only if the scope of the asserted patent claims in the two suits is essentially the same." *Id*. at 1167 (further explaining that claims that are "patentably indistinct" will be "essentially the same").

> It follows that a court may not presume that assertions of a parent patent and a terminally-disclaimed continuation patent against the same product constitute the same cause of action. Rather, the claim preclusion analysis requires comparing the patents' claims along with other relevant transactional facts.

*Id*. at 1168. This Court remanded for the district court to decide "whether formal claim construction is necessary to resolve whether the '838 and '048 claims are essentially the same as, *i.e.*, patentably indistinct from, those in the previously-adjudicated parent patents." *Id*. at 1168-69.

Just this past week, this Court reaffirmed *SimpleAir* in *XY, LLC v. Trans OVA Genetics, LC*, 2020 WL 4378028, at *6-7 (Fed. Cir. July 31, 2020), where this Court vacated a similar ruling that three patents were claim-precluded based on a prior lawsuit between the same parties. As in *SimpleAir*, the district court in *XY* never

compared any asserted claim in the second suit with those in the earlier litigation. *Id*. at *6. Instead, the court reasoned that it was enough that two patents had issued before XY filed the earlier suit, and that the other was a continuation of a patent already in suit and would be accusing the same products and processes at issue in the earlier case. *Id*.

This Court held *XY* was materially indistinguishable from *SimpleAir*. *Id*. at *7. As this Court acknowledged, two patents were continuations or continuations-in-part of an earlier-asserted patent (and one was terminally disclaimed over it), while the third is closely related and incorporates the earlier patent by reference. *Id*. Yet those facts were not enough because "the district court did not even mention the asserted claims of the [three] patents, let alone analyze their scope as compared to the scope of the patent claims asserted in XY's [earlier] lawsuit, as required under *SimpleAir*." *Id*. As in *SimpleAir*, this Court remanded for the court to analyze whether the claims of the second suit were "essentially the same" or "materially different" compared to those of the first suit. *Id*.

Because the determinative issue is whether the Waco Case is asserting the same claims or causes of action as the Houston Case, the holdings of *SimpleAir* and *XY* should apply directly to Nitro's Petition. As a matter of patent law, it is error to assume that all patents in the same family are necessarily directed to essentially the same invention. Here, the alleged overlap between the Waco Patents and the

Houston Patents is much less than what required a remand in those cases. *See supra* section III.B.1. Indeed, the '132 patent is unrelated to any of the Houston Patents, does not have the same inventor group or a common specification, and did not incorporate any Houston Patent by reference. There is clearly no basis for holding the '132 patent covers "essentially the same invention" as the three unrelated patents in Houston, even if the '645 patent has to be remanded.

If this Court holds that the district court did not clearly abuse its discretion in concluding that an exception to the first-filed rule existed, then the court's failure to follow Federal Circuit precedent and its failure to examine the specific patent claims when deciding the overlap between the Waco and Houston Cases are harmless error. Otherwise, the Petition cannot be granted or this case transferred to the Southern District unless and until the district court properly determines the degree of overlap by making the specific claim comparison required by this Court's precedent.

**C.    The District Court Did Not Clearly Abuse Its Discretion In How It Used The § 1404(a) Factors To Find That The Comparative Advantages And Interests Of The Forums Favored The Western District**

Where the overlap between the cases is not complete or nearly complete, district courts determine whether to apply the first-filed rule "case by case, based on such factors as the extent of overlap, the likelihood of conflict, the comparative advantage and the interest of each forum in resolving the dispute." *See Int'l Fidelity*, 665 F.3d at 678; *Telebrands*, 773 F. App'x at 602. As explained, the overlap between

two cases involving different patents is not nearly complete. Under this Court's precedent, the overlap here would not be substantial. And given the differences between the Houston Patents and the Waco Patents and their claimed subject matter (*see supra* section III.B.1), the likelihood of conflict would be low. *See Pragmatus*, 2013 WL 4629000, at \*11. The question then properly turned to analyzing the comparative advantages and interests of the forums in resolving the dispute.

There is nothing improper about considering the § 1404(a) factors when evaluating the first-filed rule. *See Micron*, 518 F.3d at 902–03 (in cases "with competing forum interests, the trial court needs to consider the 'convenience factors' found in a transfer analysis under 28 U.S.C. § 1404(a)"). Notwithstanding Nitro's assertion, the Fifth Circuit also permits using those factors when deciding whether to proceed with a second-filed action. *See Mission Ins. Co. v. Puritan Fashions Corp.*, 706 F.2d 599, 602 (5th Cir. 1983) (no abuse of discretion in applying convenience factors under first-filed rule); *Hart v. Donostia LLC*, 290 F. Supp.3d 627, 633 (W.D. Tex. 2018) ("Fifth Circuit endorsed use of the convenience factors in *Mission Insurance*").

Based on the § 1404(a) factors, the district court considered the comparative advantages and interests of the forums and concluded that they weighed against transfer. *See* Appx10-21. Nitro mistakenly asserts that "the District Court reverted to a venue analysis under §1404(a), finding that, because Nitro did not demonstrate

that Houston is the 'clearly more convenient' forum, compelling circumstances did exist to avoid transfer under the first-to-file rule." Petition 2. Nitro also contends that the court "committed clear error in weighting its determination <u>against</u> transfer." *Id*. (emphasis in original). Neither Nitro complaint is valid.

Under the usual § 1404(a) analysis, the movant must show that the transferee venue is "clearly more convenient" than the plaintiff's chosen venue. *See TS Tech*, 551 F.3d at 1319 (citing *In re Volkswagen of Am., Inc*., 545 F.3d 304, 315 (5th Cir. 2008) (*en banc*)). Deciding that "the heavy burden test would place too much emphasis on the exception," the district court explicitly rejected using that "heavy burden" analysis in favor of simply weighing the factors to determine which forum they favored. Appx5 (citing *N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010); *Hart*, 290 F. Supp.3d at 627).

Rather than requiring Nitro to prove Houston was "clearly more convenient," the court's standard only required Nitro to show Houston is more convenient by a simple preponderance of the evidence. Just because the court found otherwise does not mean (as Nitro suggests) that the court ignored the existence of the Houston Case or put its finger on the scale against transfer. Petition 12. In finding that the "balance of the convenience factors" favored the case staying in Waco, the district court properly identified compelling circumstances for not applying the first-filed rule where the overlap in the cases and issues were not nearly complete. Appx21-22.

Nitro cites no precedent that suggests utilizing the § 1404(a) convenience factors in this way is a clear abuse of discretion, and ample authority suggests otherwise. *See Mission*, 706 F.2d at 602; *N.Y. Marine*, 599 F.3d at 112; *Hart*, 290 F. Supp.3d at 633. Because Nitro also cites no authority showing that the district court abused its discretion in considering those factors, such "lack of precedential support means that [Petitioner's] right to transfer based on the first-to-file rule is not clear and indisputable." *See Seattle SpinCo.*, 2020 WL 3275605, at *1.

**D.      The District Court Did Not Clearly Err Or Abuse Its Discretion In How It Weighed And Balanced The § 1404(a) Factors**

At heart, Nitro's dissatisfaction is with the district court's findings on five of the § 1404(a) convenience factors. Appx12-21. According to Nitro, "[t]he District Court committed clear error regarding its application of the facts to several of the *Volkswagen* factors." Petition 21. Not so. The district court addressed every private and public *Volkswagen* factor and provided detailed analysis for each finding. Mere disagreement with a district court's findings cannot be a foundation for mandamus where (as here) such findings were rational and well-supported. *See In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009). As shown below, no clear error or clear abuse of discretion exists.

### 1. The District Court Did Not Clearly Err In Finding The Availability Of Compulsory Process Factor Is Neutral

The district court found this factor is neutral. Appx13-14. Nitro concedes both courts have subpoena power within Texas but asserts clear error based on its unsupported premise that most third-party witnesses will be in Houston. Petition 22-23. As the district court found, "non-party witnesses are in the Western District at the worksites where Nitro installed the accused products." Appx14; Appx320. These witnesses will have the most pertinent objective evidence about Nitro's infringing activities. *See* Appx54; Appx320.

For the Houston-based third parties that Nitro identified (employees at its customers' corporate headquarters, an inventor, and the prosecuting attorney), it is unclear whether they have any relevant non-privileged and non-cumulative information.[7] The district court considered Nitro's arguments about those potential witnesses, but it found their potential expense and burdens did not outweigh those of third-party witnesses in the Western District who would have to travel to Houston if trial was there. *See* Appx14 ("Nitro alleges that its witnesses would incur substantial expense by traveling to Waco and having to rent hotels. … Nitro,

---

[7] Nitro also argues the direct flights to Houston would be more convenient for inventor Gregory Conrad, who lives in Canada. Pet. 24. But Nitro has never explained what circumstances would require his trial attendance or how the burdens of traveling from Canada to Houston or Waco are substantially different.

however, fails to consider or acknowledge the travel cost for parties traveling from the WDTX to the SDTX.").

Put simply, the expense and travel burdens are similar for the non-local third parties in whichever district is not the forum. *See In re Canrig Drilling Tech., Ltd.*, 2015 WL 10936672, at *1 (Fed. Cir. 2015) (crediting similar finding when denying mandamus seeking transfer from Waco to Houston). Hence, the district court did not abuse its discretion by finding this factor is neutral.

### 2. The District Court Did Not Clearly Err In Finding The Cost Of Attendance Factor Is Neutral

The district court found this factor neutral. Appx14-16. Nitro disagrees because it believes that transfer to Houston would necessarily mean consolidation and one trial. Petition 23. Nitro has no basis for assuming that the Houston court would consolidate the cases into a single trial. The facts suggest otherwise. Nitro moved to add the Waco Patents to the Houston Case five months ago, Appx104, but such leave has not been granted. Appx33-34.

Otherwise, Nitro mostly repeats its rejected "compulsory process" arguments about the burden on witnesses from Houston. Nitro again neglects the many important witnesses in the Western District for whom a Houston trial would be equally burdensome. This includes the employees at Nitro's Monahans office and staging area, Appx319-320, and Cameron's employees in the Western District who are Cameron's best sources of evidence about its MONOLINE™ operations and

Nitro's competing systems. Appx478-479. As noted, Monahans, Odessa, and Pecos are much closer to Waco than to Houston.

Nitro also asserts that the bulk of its witnesses are in Nordheim. Appx319. But Nordheim is essentially equidistant from Houston and Waco (Appx12; Appx309-310), which supports this factor being neutral. If Nitro were truly concerned about extra driving for witnesses, it would have sought an intradistrict transfer to San Antonio, which is 100 miles closer to Nordheim than Houston, rather than seeking a transfer to a Houston docket where nothing is happening.

As the district court noted, there are important party and non-party witnesses in both districts which, without further qualitative or quantitative information, makes it reasonable that this factor is neutral. Appx15. The court did not clearly err in finding that "[w]hile the SDTX could be more convenient for the unnamed non-party witnesses and the inventors, the non-party witnesses in the Western District make this point neutral." Appx15.

### 3. The District Court Did Not Clearly Err In Finding That The Other Practical Problems Factor Heavily Favors The Western District

Nitro again asks this Court to reweigh the finding that the other practical problems that make trial of a case "easy, expeditious, and inexpensive" heavily weighs against transfer. Appx16-18. The finding that such issues of judicial economy heavily favor retaining the case in the Western District is well-supported and not clearly erroneous.

The district court also has the Cameron-Butch's lawsuit adjudicating the same Waco Patents. *See* Appx18 (noting "pending action with the same plaintiff, patented system, and patents that would require the same claim construction"). Finding that it could hear the case more quickly, the court found that "will avoid possibly conflicting claim constructions with the patents at issue in the matter already before the Court." Appx18; *see In re Vistaprint Ltd*., 628 F.3d 1342, 1344 (Fed. Cir. 2013) ("even if trying these two related cases before the same court may not involve the same defendants and accused products, … maintaining these two cases before the same court may be beneficial from the standpoint of judicial resources").

In a similar situation where a plaintiff had two suits in the same district involving the same patents but different defendants, this Court recognized that "[a]lthough these cases may not involve precisely the same issues, there will be significant overlap and a familiarity with the patents could preserve time and resources." *Volkswagen*, 566 F.3d at 1351. "Because the district court's decision is based on the rational argument that judicial economy is served by having the same district court try the cases involving the same patents," this Court held that a mandamus seeking transfer "is inappropriate under our precedents." *Id.*; *see In re Vicor Corp.*, 493 F. App'x 59, 61 (Fed. Cir. 2012) (where court had another case involving same plaintiff, same patents, and some of the same products, mandamus

denied where district court had already rejected movant's arguments that judicial economy did not weigh heavily against transfer).

According to Nitro, the efficiencies in the Western District are "entirely speculative." Petition 30. But it is fact that the Waco Court is adjudicating the same patents in another case involving similar products. Appx16-18. It is not speculation that having one court consider those patents would benefit judicial efficiency and avoid conflicting decisions. *See Volkswagen*, 566 F.3d at 1351. The current status of the Waco ases is not speculative. The parties here have exchanged infringement and invalidity contentions, proposed the terms needing construction, and will soon exchange proposed constructions, extrinsic evidence, and claim construction briefing. *See* Appx23-34; Appx328-329. The *Markman* hearing in the Cameron-Butch's case is only weeks away.

The Waco cases have advanced more in five months than the Houston Case has in two years.[8] Given how far and efficiently this case (and the Butch's case) have progressed, it is obvious that Nitro is seeking to achieve the opposite of judicial efficiency. Nitro seeks transfer in hope that the Southern District will consolidate

---

[8] Nitro implies a PTAB panel found the Waco court's schedules were "uncertain" (Petition 27 n.9 (citing Appx383-387)), but that panel cited "the number of times the **parties** have jointly moved for and the district court agreed to extend the scheduling order dates." Appx387 (emphasis added). Absent any other evidence for doubting the Waco court's schedules, its reliance on those schedules, which Nitro falsely calls "an untested hypothesis" (Petition 29), is fully justified.

this case with an effectively dormant action, likely further delaying any resolution of the merits in both cases.

Ironically, given Nitro's concern about speculation, its assertion that the Houston Case "is approaching its turn on the docket" is pure speculation itself. Petition 26. So is Nitro's premise that transfer will necessarily lead to consolidation and earlier mediation, trial, and appeal. *Id*. As the court found, the Houston Case "has been pending for almost two years with barely any progress." Appx17. Not only does that confirm Nitro's real motivation for transfer, Nitro cannot show the district court clearly erred in finding this factor weighs heavily against granting a transfer.

### 4.    The District Court Did Not Clearly Err In Finding That The Relative Congestion Of The Forums Weighed Against Transfer

The district court found this public factor weighs against transfer. Appx18-20. This factor concerns "the speed with which a case can come to trial and be resolved." *In re Genentech*, 566 F.3d 1338, 1347 (Fed. Cir. 2009). The court considered the evidence, its schedules, the progress (or lack thereof) in Houston, and statistics about the respective forums. Appx18-20. Based on the record, the court found that it will "hear this case more quickly than the SDTX." Appx20. Contrary to Petition 29, this does not mean "every other district court in the country is 'congested' for purposes of the §1404(a) analysis."

Cameron produced evidence, which the district court credited, that the Houston court "takes on average three years to issue claim construction." Appx19.

Nitro provided no contrary evidence. Appx19 ("While the Court notes Nitro's attempt to impeach this evidence, the Court also points out that Nitro provides no evidence beyond its critique of Cameron's evidence.").[9] Thus, the evidence shows the Houston court is substantially congested, no matter how many patent cases are on its docket. *See* Appx19.

It was not clearly erroneous for the district court to find that it could resolve this case more quickly and efficiently. Given the additional efficiencies arising from a co-pending action involving the same patents, this factor was not close by any reasonable measure. Because the court did not put "dispositive weight" on its speed to trial, Nitro's central complaint is therefore meritless. Petition 30. Hence, the court did not abuse its discretion by finding the "court congestion" factor weighed against transfer. Appx21.

### 5.     The District Court Did Not Clearly Err In Finding Local Interests Only Slightly Favored Transfer

The district court found this factor weighed "slightly in favor of transfer." Appx21. Now Nitro argues "clear error" because this factor should have been weighed strongly for transfer because both parties' headquarters are in the Southern

---

[9] Nitro tries to cure its failure of proof by submitting a new declaration purporting to compare the number of patent cases before Judge Albright and Judge Hughes. Appx437-456. Such belated evidence is improper, irrelevant, and should be stricken. *Tradewinds Envtl. Restoration, Inc. v. St. Tammany Park, LLC*, 578 F.3d 255, 262 (5th Cir. 2009) (striking "improper attempt to introduce new evidence on appeal").

District. Petition 30-31. Nitro does not identify any precedent for its bright-line "company headquarters" rule.

As the district court found, those facts are not controlling. Nitro ignores that its headquarters in Nordheim are no closer to Houston than Waco. Appx12; Appx309-310. Cameron's evidence showed that its employees knowledgeable about its commercial embodiments are in the Western District. Appx478-479. Moreover, both Cameron and Nitro have extensive operations in the Western District, Appx318-320; Appx478-479, where the accused activities and commercial competition extensively occur. Appx21; Appx52-53; Appx 318-320; Appx478-479.

Instead, Nitro speculates that Waco jurors will not have "any relation to the controversy." Petition 31. However, the unsupported suggestion that west Texas jurors in Waco would have less relationship to a controversy involving extracting oil and gas in west Texas than would jurors in Houston seems particularly incredible. Given the parties' extensive activities in the Western District, Waco jurors have more than a sufficient relationship to this controversy and it was more likely clearly erroneous to find that this factor favored transfer at all.

Finally, Nitro cannot show that the district court clearly abused its discretion in balancing its findings on the individual factors. Of course, redoing the balancing is not this Court's role when deciding whether to grant the extraordinary relief of mandamus. *See Vistaprint*, 628 F.3d at 1347.

## IV.    CONCLUSION

For the reasons stated, the Petition should be denied.


Dated: August 7, 2020                    Respectfully submitted,

                                         /s/ John R. Keville
                                         John R. Keville
                                         Merritt D. Westcott
                                         William M. Logan
                                         WINSTON & STRAWN LLP
                                         800 Capitol Street, Suite 2400
                                         Houston, Texas 77002-2925
                                         (713) 651-2600

                                         Richard L. Stanley
                                         P.O. Box 7967
                                         Houston, Texas 77270
                                         (832) 656-4277

                                         *Counsel for Respondent*
                                         *Cameron International Corporation*

**FORM 19. Certificate of Compliance with Type-Volume Limitations**

Form 19
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS</u>

**Case Number:** <u>2020-142</u>

**Short Case Caption:** <u>In re: Nitro Fluids L.L.C.</u>

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes <u>7,766</u> words.

☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: <u>08/07/2020</u>

Signature: <u>/s/ John R. Keville</u>

Name: <u>John R. Keville</u>

Save for Filing

FORM 30. Certificate of Service

Form 30
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF SERVICE

**Case Number** 2020-142

**Short Case Caption** In re: Nitro Fluids L.L.C.

---

**NOTE:** Proof of service is only required when the rules specify that service must be accomplished outside the court's electronic filing system. See Fed. R. App. P. 25(d); Fed. Cir. R. 25(e). Attach additional pages as needed.

---

I certify that I served a copy of the foregoing filing on 08/07/2020

by ☐ U.S. Mail ☐ Hand Delivery ☑ Email ☐ Facsimile
☑ Other: FedEx Express

on the below individuals at the following locations.

| Person Served | Service Location (Address, Facsimile, Email) |
|---|---|
| Honorable Alan Albright U.S. District Court Judge | United States District Court for the Western District of Texas 800 Franklin Ave., Room 301; Waco, TX 76701 Email: joshua_yi@txwd.uscourts.gov; suzanne_miles@txwd.uscourts.gov |
| | |
| | |
| | |
| | |

☐ Additional pages attached.

Date: 08/07/2020

Signature: /s/ John R. Keville

Name: John R. Keville